Case 14-4297, 15-3324 and 17-3162 National Credit Union Administration Bord v. Stan Jurcevic et al. Oral argument not to exceed 15 minutes per side. And Mr. Rapaway for the National Credit Union Administration. Good morning, Your Honors. Good morning. Thank you, and may it please the Court. I'd like to reserve three minutes for rebuttal, if I may. That's fine. NCOA should prevail in these appeals because of two clear statutory provisions. Both are subsections of 12 U.S.C. section 1787. Both give NCOA, when it brings an action as liquidating agent, special tools to maximize recoveries on the claims of failed credit unions for the benefit of the National Credit Union Share Insurance Fund in order to ensure that those who contribute to credit union failures are accountable for the losses that result. First, NCOA's extender statute, which is subsection B-4, gives NCOA a new limitations period for any action brought as either conservator or liquidating agent. And that new period starts when NCOA is appointed to the capacity in which the action is brought. As a result, NCOA's fraud claims here were timely as a matter of federal statutory law. Second, subsection B-2G of the statute authorizes NCOA to seek an asset freeze injunction. And unlike an ordinary private litigant, NCOA does not need to prove irreparable or immediate injury, nor does it need to prove fraud. This record was well within its discretion to order an asset freeze on this record. Now, unless the court prefers otherwise, I'll begin with our appeal, which concerns the timeliness of the fraud and conversion claims. That would be great. So we believe that our primary proposition with regard to the statute is that the new limitations period starts from the time that NCOA is appointed at the capacity in which the action is brought. We think that is the most natural reading of the statutory text, subsection B-14A and B read together. Can I ask you a practical question, which is, is there any tort that you would bring as a liquidating, as a liquidator, that you wouldn't have the same cause of action as a conservator? Not that there would be a different cause of action, Your Honor, unless it had arisen in the meantime, but there would be practical reasons that we would bring certain claims as a liquidating agent that we wouldn't bring as conservator. And in particular, the type of claim that raises that concern are usually tort claims against former officers and directors of the credit union. When NCOA is acting as conservator, it's primarily focused on keeping the credit union going as a going concern. It may need those people's help, and it may not want to immediately accuse them of negligence, breach of fiduciary duty, or even fraud, as was the case in the failure of this particular credit union. There might be other claims that would, all sorts of claims that might threaten ongoing business relationships that the conservator would abstain from bringing to keep the business going, but the liquidating agent would bring because it is focused on maximizing recoveries and on the resulting assets. I find this very difficult. What's complicated about it is you've got this later of point. They could have, of course, separated these things out, so you'd have three later of, and that would have made life a lot easier for us, but they didn't. So you have Romanetat I, and you have later of, and then you have begins. If you think of it this way, a race begins, a clock starts, and you say a race begins, and you say the race begins when there's a blue or a red flag. You'd start when either one of those is waived. You wouldn't wait until the second one. It just seems very funny when it's a beginning issue that you wouldn't start when the first of them come up. I think I understand the point, Your Honor. Our response would be that there are actually only two times, not three, that are relevant to any particular suit because any particular suit is only going to be brought in one capacity, either as conservator or liquidating agent. So when the time comes for the court to comply with the statute, there's only one possible time in a Romanetat I and one possible time in a Romanetat II, and you pick the later of those two. You would never say with regard to one cause of action you'd never have to look at all three. There's only two that are relevant. How about this analogy? Tell me what's wrong with this analogy so that it's a cruel case that applies when, we'll call it medical malpractice, and so the statute of limitations period begins after a negligent, say, operation, so heart transplant. That's one option. Then the next one is it starts after the patient dies. I consider that not a terrible analogy because I think of conservatorship as rehabilitation and I think of liquidation as death. You just don't know when the death is going to happen. The whole point of rehabilitation is to postpone it forever, perhaps, or at least a long time. What just seems very strange to me about your approach is you could have a world in which you know some problems have happened, you're a conservator, you perhaps know about some other issues. You could actually have the whole litigation start and then you have a new accrual because, as it turns out, the company, the thrift, ultimately is liquidated and then we start all over again. That just seems very strange to me, particularly with some causes of action that were there at the beginning and that normally, with statute of limitations, the incentive system is to get people to file these things sooner rather than later. There are a couple of points in your question, Your Honor, which I'll try to address. One is the question whether this effectively creates, I think, what you're getting at is an unlimited statute of limitations because no matter how long the conservatorship lasts. I'm trying to look at context. I'm using context to figure out what to do with this strange language and the context is rehabilitation and death and death doesn't always follow from rehabilitation and sometimes it happens long after. It's not so much that I'm accusing the board of wanting to set up a system where they can manipulate things. That's not my point. We just know sometimes conservatorship works and sometimes it doesn't. Well, that's true, Your Honor, and I think that's actually a good reason why Congress would have wanted, in light of its overall goal of maximizing recoveries to protect the share insurance fund, would have wanted the liquidating agent. Maybe conservatorship was expected to succeed, maybe it didn't, and now the credit union has failed and the agency has to reassess and bring claims. And the overall purpose of the statute is to maximize recoveries on behalf of the fund, and so I think that would be a good reason for Congress to take that approach. You could, to go back to my analogy, have two sets of medical malpractice claims, one for a bad operation and one for a death, separated by five years, potentially. Well, it wouldn't be five years on this statute, Your Honor, because once the four years ran, our time would expire. This is one point that may not be clear from the briefing. Once the period runs out, the statute does not act to revive stale claims. What if it becomes a liquidator? Yeah, I don't know what you mean by that. So the new period starts running, or it would have the opportunity to bring claims when it becomes a conservator. But if the time expires under the statute to bring the claims, so in this case it's a four-year period. If that four-year period runs out and they're appointed liquidating agent on the fifth year, they don't get another new period. Those claims are time-barred and they're done. Why not under the language? Yeah, I didn't understand that from your position. So there are a number of cases on this point, Your Honor. The Omelick 9 case, which we cite in our briefs, has a discussion of it. The Fifth Circuit has had several cases on this. Explain it to me under the statutory language, because what you're asking us to do is look at the text of the statute as a starting point. Your argument is it's the later of the two. So if you become liquidating agent, it says the statute of limitation begins to run in under your argument when you become the liquidating agent. Why would it change? So now you get, do you only get three years and 51 weeks in this case? No, we get the four years, but we get the four years from the appointment as liquidating agent. But if we had waited four years as conservator and the time had run out, then we would be done, because the statute does not revive stale claims. And in terms of where to read that into this. But just to make sure, I'm afraid I'm missing something. So just everything you just said, they didn't bring the claims, they were a conservator, they had a chance to bring them, they didn't, the statute runs out, claims become stale. I guess I had thought if you had to liquidate at that point in year five, the period begins again. Am I wrong about that? You are incorrect about that. And in terms of how we ground that in the statute, I would generally tie it back to the word claim, because there's no claim for the agency to inherit in the new capacity if it's already gone. But this has been settled in a number of circuits, not this circuit, Your Honor, but a number of other circuits, including the Tenth Circuit in a case called Regier and Carr, and including the Fifth Circuit in a case called FDIC versus Dawson that collects a number of other cases. And I think that the courts, considering the statute in that way, reading that limitation in the statute, were concerned about this possibility of indefinite limitations periods. And so they held that... So how do you decide what claims are forever barred and what claims are not forever barred? You look at whether the preceding entity, which is either the credit union or if in a multiple capacity case it could be the agency acting as a conservator, but you look at whether the claims would have been time barred as of the date of appointment. That was actually a big issue in the Credit Suisse case, Your Honor, which was discussed in the briefs. We never took the position that if the claims had been time barred before the credit union went under, we could bring them. So go back to where you started. There are types of claims that as a conservator you would know about but wouldn't want to bring. Say fraud claims against officers. You've got to work with the officers. You're trying to rehabilitate. You don't want to bring those claims. Things don't work out. There's a liquidation. That particular fact pattern, time bar, fraud claims against the officers or not. If the conservator has waited out the period for whatever reason, good or bad, then it's done. If it would have been time barred as conservator, it doesn't come back. I don't understand what work your ideas have. I not only don't understand how this works with the statute, I don't understand what work this idea has that the board wants authority to decide to sue sometimes and not others with the same claim. You're saying they don't have that option. As a practical matter, Your Honor, it's unlikely for the conservatorship to last as long as we've been discussing. It's a hypothetical. You said cases have discussed it, so somewhere it has, right? The cases that I was referring to, Your Honor, are cases in which the time ran out before even the conservatorship or the receivership or the liquidation agency happened. If the time runs out before then, then the claims are gone. Tell me this. You're giving great answers, so thank you, but this is really hard. Is there any way you can tell us that the date on which the cause of action accrues is really easy? Let's just say, for the sake of argument, the lower court was wrong about their way of handling it. Is this an easy one for you? That is very easy, Your Honor. Easy one to win on, not easy one to preserve the issue. In other words, let's say you're right about affirmative defenses and all that stuff. This is still in the case. Is that an easy one for you to win here? The discovery rule issue, Your Honor? Yes, yes. Under Jones v. Bach, in this court's case in Cataldo, we did not have to plead facts to defeat affirmative defense. Okay, so you're right. Everything you say in your brief is right about the cause of action accrual argument that there was a mistake made by the district court. But that still leaves the question, what are the facts going to show about the application of the discovery rule to this case? And I realize the facts aren't there, and I expect you'll be careful about what's in the record and what's not. But how much confidence do you have on behalf of your client as to that limitations period? You must understand where I'm going. I'm trying to avoid a hard question. Your Honor, if you find the statutory question difficult and would prefer to avoid it, we will take the remand and we will do our best to win that other issue on remand, and I think we have a good chance of prevailing on it. Can I ask one follow-up on that? Yes, Your Honor. You said in your brief, I thought, 2012 for the fraud. Is that correct? 2012 was the time at which the agency's investigation was complete. Now, it will, of course, be contested on remand whether that was a reasonable investigation and whether we should have found it earlier. But 2012 was when the agency finished its review of the books and records. And you understand, Your Honors, that this was a large failure of a large credit union that had a lot of collateral consequences, and Mr. Dricevic was not top of the list. But we did finish that review in 2012. So that would be our view, I think that would be our position as to when the statute would have been completed. I'll leave this go because I'll take your word for it. When did they know, the guy who got 14 years that you referenced in your brief, that the defendant was allegedly conspiring? Tony Raguse, yes. When was he sentenced? When did he plead, maybe even more importantly? And why wouldn't that put you on notice that at least there was something to investigate? I don't know, Your Honor, but if you were to measure accrual from that point, if you could measure it, we'd be timely. We would have no problem. The fraud was not discovered until the conservatorship. That's why they went into liquidation a week later. We came in, we looked around, we saw this is a mess. We had to put them into liquidation almost immediately. And all you need is six days. Yeah, all we need is six days on the discovery rule. Just really quick, this has nothing to do with anything, and I should have been able to figure this out on my own, but the board is a government entity, right? Yes, Your Honor. Are you a government lawyer? I'm not, Your Honor. What happened? The board of NCUA is an independent agency in the executive branch. And they can hire outside firms for their work? They can because when they sue as conservator or liquidating agent, they have all the rights of a private entity, and traditionally they have hired outside firms to do these types of cases so that the costs of them are borne ultimately by the share insurance fund rather than by DOJ and the Treasury. Brilliant. You get paid like a private lawyer, but you get to do fun government work. I should have thought of that. I never quite figured that one out. Very glad to be here. That's very good. So we've been really obsessed about this one issue. I mean, is there something you really want to say about anything else that you don't trust us to figure out on our own? I don't want to emphasize trust too much. Your Honor, if you have any questions about the asset freeze injunction, I would be happy to answer them. I think that's fairly clear from the briefs. So I think I'd be happy to, and maybe something will come up, and I can deal with that on rebuttal. Yeah, no, we'll give you plenty of time on that. I think we're good for the start, so thank you. All right, appreciate it. Thanks for answering the questions. Mr. Fitzgerald? Thank you, Your Honors. May it please the Court, I am Tim Fitzgerald. I'm here on behalf of Stan and Bara Jurcevic in Stack Container Services, which was a company that Mr. Jurcevic operated as an intermodal trucking entity. I would like to address the asset freeze injunction, because that's my client's appeal, but it's clear that the panel is most interested or has been to this point interested in hearing an argument on the statute of limitations issue and the extender statute. I guess I have one question on the asset freeze injunction, which is given the text of 1787, I didn't see that it requires fraud for the issuance of an injunction, but you made that argument, so I'm wondering where that comes from. Well, it has to do with the likelihood of success on the merits of the case, and the fraud claim is the linchpin to what the Board argued was the basis for concern that Mr. Jurcevic was going to be absconding with assets, things of that nature, and I think it goes back to the concern over the lack of a hearing in this case, that there really isn't any developed record as to what evidence was presented, because there was no evidence presented. The evidence that was presented was an affidavit by Russell Vardaman, who was an individual who reviewed the account and basically came to the conclusion that the loans had not been repaid. I don't think that's an issue in dispute, but that isn't the basis for issuing an injunction in a case. There still has to be all of the elements of Rule 65 that would be complied with. I would just point out there's been the argument made here that there is no need to establish any type of harm to the Board before an injunction can be issued under the Credit Union Act. I think that's untrue. It doesn't need to be imminent or irreparable, but it's clear that it does still have to have some evidence of harm to the Board. No evidence was ever presented to the District Court on that issue, and I would point out that at page 5 and 6 of the transcript of the hearing that was held, it wasn't an evidentiary hearing, the District Court made the point that he was ruling on this issue as if it was a discovery issue, which has a totally different standard than a Rule 65 injunction. The District Court judge clearly applied the wrong legal standard in issuing the asset freeze injunction. That, in and of itself, is grounds to reverse the injunction. Unless there are other questions on the asset freeze, because I do think the brief... As a practical matter, what happens if you win on the asset freeze? So what would happen next? Well, that gets a little complicated, and it gets a little bit outside of the record in this case, only to the extent that Mr. Jurcevic has filed for bankruptcy. And our reply brief pointed out that it... So that's what I mean, like who cares, or why does he care? I don't know the answer whether or not the asset freeze injunction is still in place at this point in time, given the fact that there is a bankruptcy proceeding at this point. I don't know the answer to that, whether the Bankruptcy Court would trump the District Court's injunction over those assets. That might need to be something that would have to be flushed out on remand, because when the injunctions were being heard and briefed, the bankruptcy hadn't been filed yet. So it may very well be that there's a question as to whether or not the asset freeze injunction has been mooted, in essence, by the bankruptcy filing. Let's say the fraud claims are time-barred. They would be time-barred as to tort claims. They wouldn't be time-barred as to bankruptcy defenses, would they? I guess it's hard for me to understand why that would be so. I don't know the answer to that, Your Honor. I don't know if the Bankruptcy Court would... So then we're left like, who cares? Isn't that right? Well, no, not as to the fraud claim. If the fraud claim is barred by the... I guess it depends on what the assets are. I got it, yeah. Wouldn't it still be relevant, though, because there are certain assets that are exempted from turning over to the bankruptcy? So under the asset freeze, they're presumably then still available in connection with... There may be, and in fact, the way the injunction order is written, it excluded Mrs. Jurcevic once she was dismissed from the case, but all the subsequent injunction orders imposed an injunction as to assets that Mr. Jurcevic owned individually or jointly. So it could arguably still impair Mrs. Jurcevic's ability to, you know, utilize assets and dispose of assets. She has not filed for bankruptcy, so that issue would not implicate the effectiveness of the injunction as to her. But if there's a single exempt asset, it's not moved, right? Right. Yes. I may have missed... Can I ask one other question? Absolutely. We're in this tricky statutory interpretation question, which I think everyone has to acknowledge is not a piece of cake, right? Absolutely. And you've got the other option of claim accruing. Let's just say for the sake of argument that Judge Nugent kind of didn't get right what's an affirmative defense and how this all works, and that the board really has a right to that option. Okay? So that at a minimum, whatever else happens in the case, you need a remand on that issue. What's your confidence level on that one? Well, the... I mean, I'm trying to figure out how relevant this very tricky statutory interpretation case is to both of you. Well, as I was beginning to say, I may have misconstrued the board's position in this case because I think they argued an oral argument now today that they are not looking to reset once the liquidator is appointed. So the... They are. What they said is if the four years run as a conservator, then they can't become a liquidator and reset it. But what they said, and I think what Judge Sutton's getting to, is ignore the first part. Look at the second part. If we remand and say, just for example, he got that part wrong, how confident are you in that? Well, I'm confident for the reason that on the date that the conservator, the board was appointed the conservator of St. Paul Credit Union, all of the, at least the evidence that they've presented in support of their fraud claim was all known and were available to the board on day one, on April 23, 2010. All of the Juris Evic loan applications... You've told us enough. I mean, because the reality is applications of discovery rule may require evidence. And so given what Judge Nugent did, he didn't get that evidence. Understandably, you're going to oppose their position. I got it. That makes sense. Well, the point that I'm trying to make is that the evidence that the board itself presented in its complaint was sufficient to tell the court that if that evidence was available to the board, that's an allegation in the complaint and that can be the basis to dismiss a complaint on a 12B6 motion. You don't need to go... Yes, there may be other cases where discovery rule requires... Sorry, I'm not following you. The complaint they filed in 2014? Yes. Included the applications that they now allege either did not disclose certain information or... Right, but why couldn't they have discovered those in 2012, for example? Well, I'm sure they did, but the argument that they're making that they didn't complete their investigation until 2012 is not the standard for the discovery rule. The discovery rule is when did they have information available to them that would allow them to know and perhaps make further inquiry and investigation to determine whether they've got a fraud claim. All of that was available to the board on April 23, 2010, which was more than four years before they filed this complaint. So your answer is, in response to Judge Sutton's question, you're confident you'll win, they're confident that... I'm confident I'll win, I'm confident that I should have won on a 12B6 motion based on the evidence that was attached to the complaint that the board alleges is the basis for their fraud claim, and that's the application. They're not arguing that Mr. Jurcevic made oral representations or misrepresentations. Their sole basis is that these applications that Mr. Jurcevic supposedly signed, because there are issues about whether they're really his applications, but take that aside because that's not an allegation that the court has to accept. But that evidence alone... Can I change gears on you just for a second? If we go to the first clause, the liquidator or the conservator, is there ever a scenario, and you tell me, I don't know, that the board has appointed a liquidating agent before becoming a conservator? In other words, do they go in and appoint just a liquidating agent or even themselves right away, or do they come in as a conservator and try to save it before they liquidate them? I can't tell you that I know the definitive answer there, Your Honor. I would suspect that they can be appointed liquidator before the conservatorship, but I don't know if it needs to go lockstep, the conservator, and then maybe a day later, a week later, a year later, ten years later, they could convert to a liquidator. Or on day one, whether they can come in and see that the institution is so financially unstable that liquidation is a foregone conclusion. I'd be shocked if you couldn't liquidate right away because there are times where if you wait, you lose the whole point. That would be my sense as well. And I think Judge Nugent got this right in a sense, and Judge Sutton, I think you even started to mention the fact that if the board's position here is adopted as far as the resetting of the statute based on when the liquidator gets appointed, there is an indefinite statute. You would never know when the statute runs because the conservator could be in existence for a week, a month. Now they say if the cause of action accrues during the conservatorship and four years runs, the claim dies and they can't bring it as a liquidating agent. Then that's what we have here because the four-year statute ran before they were appointed the liquidator. No, it didn't. I thought the four-year statute ran six days before they filed the suit, according to you. Yes, they were appointed the conservator on April 23, 2010. They didn't file the complaint until April 29, 2014. No, I understand, but what they say is the whole claim has to run and then it's gone. And so a liquidating agent can't bring the claim anew. Does that make sense? Yes. But if they're appointed a liquidating agent during the period, then I understand their argument to be the claim starts to run anew. The statute of limitations, I'm sorry, starts to run anew for that claim. I don't agree with that argument, but even if that argument were to be correct, we would still prevail in this case because the statute, the four-year statute ran before they were appointed the liquidator. So if that's their argument that I thought they were appointed the liquidator in 2010, a week after they were the conservator. Yes, April 30, 2010. So their argument is then it starts anew because the claim was never extinguished. So the statute of limitations starts anew on April 30, so the claim would be timely. That's how I understand their argument. Oh, okay. All right. I – But go ahead. I'm sorry. But that goes back to the thing we were talking about before, using the language of the statute to make that work. That's right. It would have to allow for the board to make the decision that they're not going to bring a claim as a conservator and instead wait until they are appointed as liquidator to begin – They gave a pretty practical reason. I mean, a lot of times when you liquidate, you're going to go after your officers. But as a conservatory, you definitely don't want to. So why doesn't that make sense that we should let the board try, and then if it fails, they get the same time to bring the claim against their officers? Well, I think that opens up the concern that Judge Nugent recognized and that other courts like Credit Suisse have recognized. And that is then the statute is – you would never know when the statute runs until the board decides that they have decided to liquidate and those board members or officers of the institution are no longer useful to them. Let me ask you, can the board appoint someone else as conservator? I don't know the answer to that. I don't know if they are solely the ones that can step in as the conservator. I would submit that the argument that the way the statute is written is to encourage the board to maximize the recovery actually plays in favor of bringing these claims sooner rather than later. The argument was made that maximizing of recovery should delay the statute running. I would submit that it's just the opposite, that if that really is the true intention of the statute, it would be to encourage the board to bring claims sooner rather than later. And if they have to make a business decision to keep somebody on longer because they think that they can be useful to them, like any other litigant, you make a business decision or a strategic decision not to sue someone timely or sooner, you run the risk that your claim is going to be barred. And so I don't think that helps them to say that there may be some circumstances where a board member or an officer of the institution might be useful to keeping the institution. The problem with that argument is that you're taking away the ability of the board to prioritize what they want to do. It's just not feasible to think they can sue everybody on the same day. Well, I'm not saying they had to sue on the same day. They have to go after the big fish first and then the smaller fish later. They had four years to do that. I mean, I understand you say they might have waited too long, but to say that a shorter construction of a statute of limitations maximizes recovery seems to be pretty much a non sequitur. It just seems like it's true sometimes and not others is what I would say. There will be times where it's true, and I'm afraid there will be times where it's not true. But I think the construction of the statute really, though, should be more definitive than just saying that there may be a time in the future when they decide that an officer or someone else that was useful to them no longer is, and they're going to file the claim at that point in time. Thank you, Your Honors. Thank you very much for your argument. Is it Rapawi? Rapawi, Your Honors. Rapawi, sorry. Thank you, Your Honors. I just have a few sort of follow-up points. One is an answer to Your Honor's question earlier. The sentencing press release for Mr. Raguse was issued in 2012, so if that were our inquiry notice date, then we have no problems. A couple of points on the asset freeze injunction. I think this was covered in the briefs, but there was evidence that was not available to us concerning the fraud at the time, for some time after conservatorship and liquidation. In particular, the two things that are alleged to be fraudulent here are the loan guarantees to PNC. Nothing in the complaint suggests or shows that we would have known about those at the time of conservatorship. And also the fact that his business was failing. We learned about that through the hardship affidavit that he filed. That's Record Excerpt 30-1 and the accompanying financial statements. Those are dash 2 and dash 3. So to summarize that, the short answer is you don't care if we decide the first point because you think you'll win under the second. Your Honor, the agency has an institutional interest in this construction of the statute, and I think we have a very strong case on it. I didn't even get to really the legislative history or the canon that it's construed in favor of the government. But those only apply. I mean, legislative history we can debate about forever, but the canon only applies if it's ambiguous, right? Yes. Just because it's hard, it doesn't mean it's ambiguous, right? I understand, Your Honor. The canon would apply if you find it to be ambiguous. I think we get to at least ambiguity here, Your Honor, but I understand that the Court has doubts about that. If the agency cares about this construction, is this the position of the United States? Should the brief count as the position of the United States? I mean, if we get that issue, should we ask for whether they want to participate as an amicus? Or is this – I don't even know how this works. Or do you have to clear your position by them as is? So I have – when I say that the agency has the interest, that is my instruction from my client, which is – Exactly. I got that, but in terms of DOJ, I take it – I mean, I don't – I'm not looking for inside information, but I've been in the situation before where we do an interesting, tricky issue, and the federal government has an interest but had not participated until the Supreme Court, and then we learn about this really sophisticated – not as sophisticated as your position, but they have their own insight, and it's the government. Sometimes they get some deference that private litigators don't. I guess the question I have is do we know this is what DOJ thinks, or should we ask? I don't think you should ask, Your Honor. The agency litigates for itself at all stages except for the Supreme Court. If a case goes up to the Supreme Court, the practice has been to defer to the Solicitor General's office at that stage. I see. It's never been resolved whether we have formal litigating authority in the Supreme Court, but the practice has been to defer. And so that would – but I don't think you need to ask DOJ for its opinion here. Okay. Can I just – I thought Judge Tappar seemed to characterize what I think is your position about the limitations period running if you've been a conservator. Can you just restate it again just so I make sure I understand what you mean by if the period is run on a claim, you can't restart it by being appointed as a liquidator? Yes, Your Honor. And tell us how it applies to the dates here, just to make sure we're on the same page. So as of the first appointment to the capacity is conservatorship. If the four-year period started running or would have started running if we'd brought an action as a conservator. Just give us that date so we have it all in the context of the dates. It's April 20th through 21st, Your Honor. Okay. All right. Until 2010. And then a week later, we are appointed liquidating agent, and our position is that at that time all the fraud claims could still have been brought. They were still viable. And so we get a new four-year period starting from that date. I see. So as long as the four-year period hasn't run in your capacity as conservator, you can be a liquidator all the way up to the last day and it starts again. But if it's after the four years, they're gone. And that applies to anything you could have brought at all. Well, there's different time periods for different types of claims. No, no, no. All tort claims. All tort claims get a minimum of three years or more under state law. What about a tort claim that was only, for some reason, identifiable in a liquidating setting? Oh, then we'd be under Romanet II, which is it accrues later. So if there's a later discovery. So, for example, if we had found only later that, you know, I don't know, Mr. If we found out about Mr. Raguse only later and if we had had no opportunity to, that's a little bit of a fanciful hypothetical, but you could imagine a situation where it was only discovered later and then Romanet II would give us the. So it has to. It has to accrue. But April 23rd in this case, I think I'm right. You're appointed conservator. April 30th, you're appointed liquidating agent. April 29th, I may have the dates wrong. You bring the claim 2014. It's timely because it reset April 30th because the claim was still viable, correct? That's the position. So if it's three years and 364 days and you're appointed liquidating agent, the day before all those claims run, it resets for four years. That is an extreme hypothetical, Your Honor, but that is our position. It's a very smart approach. I put it in the manual. Here's what we do. What's the answer to the earlier question to your opposing counsel about whether the board can and does appoint somebody other than itself as the conservator? Yes, they can. There's at least one other conservator who can be under statute, which is that if it's a state credit union that's federally insured, they can appoint the state agency instead of the NCOA board itself. I believe they would have discretion to appoint another party as well. As a matter of practice, the agency tends to appoint itself. And the other question as far as liquidation is concerned, yes, we can go straight into liquidation. That has happened. Okay. Thank you very much for both of your excellent briefs and excellent oral arguments. Thanks for answering our questions, which we always appreciate. The case will be submitted, and the clerk may call the next case. Thank you.